UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                  :
BLAKE WINGATE,
                                                                  :
                                      Plaintiff,                  :        05 Civ. 1872 (LAK) (DF)
                                                                  :
                    -against-                                     :        **MEMORANDUM**
                                                                  :        **AND ORDER**
CORRECTION OFFICER GIVES, et al.,
                                                                  :
                                      Defendants.                 :
                                                                  :
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

Following the Court's resolution of defendants' motions to dismiss the Amended

Complaint, the following claims brought pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff

Blake Wingate ("Plaintiff") currently remain in this case:  (1) claims for malicious prosecution

against defendants Rachel Alvarez and Rebecca Asman, both New York City police officers, and

(2) claims that the other remaining defendants, by failing to ensure that Plaintiff received a

prescribed medical diet while he was incarcerated at various Riker's Island facilities during the

period from 2004 to 2005, were deliberately indifferent to his medical needs.  Since the date

when those motions were decided, Plaintiff has been released from custody.

Now before the Court are a number of new motions.  The first arises out of Plaintiff's

representations to the Court that, subsequent to the time he pleaded his Amended Complaint, he

was released, re-incarcerated, and then again denied his medical diet.  As a result of Plaintiff's

statements in this regard, the Court directed him to move for leave to supplement his pleading

pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  (*See* Order, dated Apr. 23, 2008

("4/23/08 Order") (Dkt. 84), at 3 (directing Plaintiff to file a motion for leave to supplement his

1

Amended Complaint "with respect to the claim that he currently is, and since his return to City custody has been, denied a proper diet).)  When Plaintiff then filed an "Addendum" to his pleading, the Court construed this document as a motion to supplement.  (*See* Dkt. 110 ("Addendum," dated June 5, 2008, docketed as "Motion To Supplement the [Amended] Complaint") ("Pl. Mot.").)

Although the Court anticipated that, by filing a motion to supplement, Plaintiff would seek to add allegations of further instances of being denied his medical diet while incarcerated, his motion goes well beyond the proposed addition of such allegations.  In his submission, Plaintiff seeks to name 17 new defendants, including, *inter alia,* the Corporation Counsel of the City of New York, Plaintiff's former criminal defense attorney, an Assistant Attorney General of the State of New York, a Clerk of the New York State courts, the Commissioner of the New York State Department of Corrections, and a Muslim Imam.  (*See id.*)  As for the nature of his substantive allegations, although Plaintiff does seek to plead that, when he was re-incarcerated, he was again deprived of his medical diet, he also seeks to add a host of wholly new claims, ranging from a claim of ineffective assistance of counsel to claims regarding various prison conditions or procedures never previously mentioned in his earlier pleading.  (*Id.*)

Also before the court are 15 motions that have been made by other inmates at the Riker's Island facilities at issue, who, like Plaintiff, allege that they have been deprived of their medical diets, and who seek to intervene as plaintiffs in this action.  (Dkts. 94-99, 101-08, 119.)

For the reasons set forth herein, Plaintiff's motion to supplement is granted in part and denied in part.  The motions to intervene are denied.

## BACKGROUND

Plaintiff filed his Amended Complaint in this action on March 25, 2005.  The background of the claims he pleaded at that time is summarized in this Court's Report and Recommendation, dated March 17, 2008 ("3/17/08 R&R") (Dkt. 80) (adopted by 4/23/08 Order (Dkt. 84)), familiarity with which is assumed.

Most of Plaintiff's new allegations appear to be based on the time period from April 4, 2007 (when Plaintiff was rearrested) to June 25, 2008 (when he filed his motion to supplement), a period Plaintiff calls the "second range" (*see* Pl. Mot., at 3, 11).  These new allegations may be summarized as follows:

### A.   Plaintiff's April 2007 Arrest

On April 4, 2007, Plaintiff was arrested and charged with criminal possession of a controlled substance and resisting arrest.  *See People ex. rel. Blake Wingate v. New York State Div. of Parole Warden, et al.*, No. 340213-08, 2008 N.Y. Misc. LEXIS 4622, at *2 (Sup. Ct. Bronx County Aug. 4, 2008) (Clancy, J.S.C.).  Plaintiff alleges that the police officer who executed the April 4, 2007 arrest was Sergeant Scott Fields, the same officer who, according to Plaintiff, participated in another false arrest of Plaintiff in 2003.  (Pl. Mot., at 11.)  Plaintiff further alleges that, in the course of the April 4th arrest, Sergeant Fields beat Plaintiff in the head, face, and body, and sprayed Plaintiff with mace.  (*Id.*)

### B.   Alleged Failures To Provide Plaintiff With His Medical Diet

Upon his arrest in April 2007, Plaintiff was initially held in state custody.  (Pl. Mot., at 11.)  Plaintiff alleges that, while he was being held at New York state correctional facilities including Sing Sing, Attica, Fishkill and Auburn, he received his medical diet only sporadically, if at all.  (*Id.*, at 8-10.)  Plaintiff also alleges that, during this period of incarceration, he filed

multiple grievances with New York State Department of Correctional Services Commissioner Alan Croce, to no avail.  (*Id.*, at 10-11.)

On June 3, 2007, Plaintiff was returned to the custody of the New York City Department of Corrections ("NYCDOC").  (*Id.*, at 12.)  Over the following year, Plaintiff was held for various periods, which are difficult to determine precisely, at several NYCDOC facilities on Riker's Island, including the Anna M. Kross Center ("AMKC"), the George Motchan Detention Center ("GMDC"), the George R. Vierno Center ("GRVC") and the Robert N. Davoren Center ("RNDC").  (*See generally id.*, at 11-13.)[1]  Plaintiff alleges that the food service manager of each of these facilities had been notified of his medically prescribed diet, but that each manager generally failed to ensure that inmates with medically prescribed diets received the correct diets.  (*Id.*, at 18.)  Plaintiff further alleges that his proper medical diet was served to him only sporadically while he was at AMKC (*id*. at 12), GMDC (*id*. at 12-13), RNDC (*id*. at 8) and GRVC (*id*. at 13).  In connection with this issue, Plaintiff has also made specific factual allegations against certain individuals (in addition to the food service managers), who were employed at the relevant facilities.  The allegations against these individuals, who include Dr. Trevor Napier, Dietician Ms. Purohit, and Nutritionist Jane Doe (*see id*., at 13-17, 20, 23-24), are discussed more thoroughly below (*see infra* at Discussion, Sections II(B)(1), (2) and (4)).

---

[1] As best as the Court can ascertain from Plaintiff's papers, he was held for some period prior to June 3, 2007 at AMKC; from June 3-July 3, 2007 at GMDC; from July 3 to August 2, 2007 at GRVC; from August 2 to some time in September, 2007 at GMDC; from September 2007 to January 2008 at RNDC; from January to March, 2008 at AMKC; for one week in March 2008 at GMDC; and then from March to July 2008 at GRVC.  (*See* Pl. Mot., at 12-13, 15-17; *see also* Declaration of Carl DiCarlo in Support of City Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend His Complaint (Dkt. 115), at Exhibit A.)

### C.   Alleged Failure To Process Plaintiff's Grievances

Plaintiff also alleges that, while incarcerated in 2007 and 2008, he filed over 25 complaints and grievances with numerous city and state authorities.  (Pl. Mot., at 13.)  One individual in particular, identified as Grievance Coordinator Moultre of GRVC, allegedly refused to process Plaintiff's grievances in retaliation for his lawsuit against grievance coordinators from other facilities.  (*Id.*, at 13, 21.)  The grievances that Plaintiff filed with Ms. Moultre, which she allegedly failed to investigate adequately, relate to the following subjects:

1.   out-of-date books and missing law journals in the inmate law library;

2.   untrained law clerks staffing the law library;

3.   environmental hazards in connection with the location of Riker's Island;

4.   Plaintiff's inability to attend his wife's funeral;

5.   the loss of one dollar from Plaintiff's prison bank account;

6.   unfair limitations on the weight of legal mail permitted to be sent by inmates; and

7.   the lack of a scale and postage stamps in the prison mail room.

(*Id.*, at 21.)

### D.   Alleged Failure To Enable Plaintiff To Attend His Wife's Funeral

On May 30, 2008, while Plaintiff was incarcerated, Plaintiff's wife passed away.  (Pl. Mot., at 21-22.)  Plaintiff alleges that the Imam named in his motion attempted to inform him by telephone of his wife's death, but that Corrections Officer Andujar refused to release Plaintiff from his prison cell to receive the phone call.  (*Id.*)  The Imam then proceeded to hold the funeral in Plaintiff's absence.  (*Id.*)

### E.   Alleged Ineffective Assistance of Counsel and Malicious Prosecution

In connection with Plaintiff's state criminal case, Plaintiff has made specific factual allegations against Victor Knapp, Esq., Andrew Meir, Esq., and Regina Moran.  (Pl. Mot., at 24-27.)  Plaintiff alleges that Mr. Knapp, Plaintiff's attorney in that case, failed to file a speedy trial motion pursuant to Section 30.30 of the New York Criminal Procedure Law and also failed to obtain certain records to which Plaintiff believed he was entitled.  (Pl. Mot., at 25-26.)  When Mr. Knapp subsequently withdrew as Plaintiff's counsel, Plaintiff filed an application for the appointment of new counsel.  (*Id.*, at 25.)  Plaintiff alleges that Ms. Moran, a clerk in Bronx Criminal Court, misfiled that application and, as a result, he was not provided with counsel.  (*Id.*)  Despite the fact the Plaintiff was then unrepresented, and without waiver by Plaintiff of his right to counsel, Mr. Meir (the Assistant Attorney General) allegedly proceeded to prosecute the case against him.  (*Id.*)

### DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

### A.   Amendment and Supplementation of Pleadings

Motions to amend or to supplement a pleading are governed under Rule 15 of the Federal Rules of Civil Procedure.

Rule 15(a) provides that, after a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Rule 15(a) further provides that the Court "should freely give leave [to amend] when justice so requires."  *Id.*

Where a party seeks to add allegations regarding any "transaction, occurrence or event that happened after the date of [its] pleading," it may move under Rule 15(d) for leave to

6

supplement its pleading.  Fed. R. Civ. P. 15(d); *see Marcucci v. N.Y. Dist. Council of Carpenters Welfare Fund*, No. 97 Civ. 7406 (LBS), 2001 U.S. Dist. LEXIS 20923, at \*5 n.3 (S.D.N.Y. Dec. 17, 2001) (a motion to supplement a pleading is properly made "when a party seeks to plead events which have happened since the date of the pleading sought to be supplemented.") (internal quotations omitted) (citing *Flaherty v. Lang*, 199 F.3d 607, 614 n.3 (2d Cir.1999)).  In addition, a Rule 15(d) motion may be appropriate when the movant seeks to add new parties or claims arising from the new events.  *See Griffin v. City Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 226 (1964) ("[I]t follows, of course, that persons participating in these new events may be added if necessary.  Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice."); *Quentin Group LLC v. Interlink Prods. Int'l Inc.*, No. 97 Civ. 0108 (SC), 1997 U.S. Dist. LEXIS 8023, at \*5-\*6 (S.D.N.Y. June 9, 1997) ("A party may supplement its complaint by adding new claims to the action 'when subsequent events make it necessary to do so.'" (quoting 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.30, at 15-107 (3d ed. 1997))).  Rule 15(d) motions are evaluated by the Court under the same liberal standards used to evaluate motions to amend pleadings under Rule 15(a).  *See New York State Nat'l Org. for Women v. Cuomo*, 182 F.R.D. 30, 36 (S.D.N.Y. 1998); *Forbes & Wallace, Inc. v. Chase Manhattan Bank*, 79 F.R.D. 563, 565 (S.D.N.Y. 1978).

Although courts freely give leave to amend  or supplement a pleading, leave should be denied if the proposed amendment or supplementation would cause undue delay or other prejudice to the opposing party, if it has been proposed in bad faith or with a dilatory motive, if there has been a repeated failure to cure deficiencies in the pleading by prior amendments, or if the amendment or supplementation would be futile.  *See, e.g., Dluhos v. Floating and*

7

*Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987).  The decision whether to grant leave to amend or supplement a pleading is within the sound discretion of the Court.  *New York State Nat'l Org. for Women*, 182 F.R.D. at 36.

Any amendment or supplementation of a pleading that raises a new claim is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998) (denying leave to supplement where the claim to be added would fail to state a claim upon which relief may be granted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).  In other words, if a proposed claim would be subject to "immediate dismissal" for failure to state a claim, the Court should not permit the amendment or supplementation.  *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999).  If, however, a party seeking to amend or supplement "'has at least colorable grounds for relief, justice . . . require[s]'" that its motion be granted.  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).

Futility is generally adjudicated without resort to any outside evidence.  *See, e.g.*, *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); *see also Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)) (stating that, under the Fed. R. Civ. P. 12(b)(6) standard, the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations

8

in the light most favorable to the plaintiff").  At the same time, the Court will recognize that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (A pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").  Nonetheless, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority). Notably, "even after [the Supreme Court's decision in] *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  *Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008).

Finally, where a plaintiff seeks to join multiple new defendants to an action, the plaintiff will have the right to do so only under limited circumstances, as where, without the persons sought to be joined, "the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Where joinder of defendants is not required, the Court may nonetheless permit it, upon a showing that (1) "any right to relief is asserted against [the proposed defendants] jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

B.      **Intervention**

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure; Rule 24(a) governs intervention as of right, and Rule 24(b) governs permissive intervention.

Under Rule 24(a), a proposed party may intervene as a matter of right where the intervenor "is given an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or where the intervenor (1) "claims an interest relating to the property or transaction that is the subject of the litigation," (2) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (3) demonstrates that "existing parties [do not] adequately represent that interest." Fed. R. Civ. P. 24(a)(2)).  "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (quoting *Farmland Dairies v. Commissioner*, 847 F.2d 1038, 1043 (2d Cir. 1988)).

Under Rule 24(b), a court may permit a proposed party to intervene where the intervenor "is given a conditional right to intervene by a federal statute," Fed. R. Civ. P. 24(b)(1)(A), or where the movant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Yet even where the underlying legal theories are the same, courts may deny permissive intervention where dissimilarity of facts would cause confusion and raise extrinsic issues.  *CCS Commun. Control, Inc., v. Law Enforcement Assocs*., No. 84 Civ. 1274 (RWS), 1984 U.S. Dist. LEXIS 24400, at *2-*3 (S.D.N.Y. Aug. 13, 1984).  In addition, the court must consider whether granting permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(3).  Ultimately, the

10

decision whether to grant permissive intervention is within the discretion of the district court. *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) ("We review a district court's ruling on permissive intervention for abuse of discretion, and our review in this area is particularly deferential.").

Motions for intervention as of right or for permissive intervention must be "timely." Fed. R. Civ. P. 24(a), (b).  In determining the timeliness of a motion to intervene, the court will evaluate the totality of the circumstances.  "Circumstances considered in this determination include:  '(1) how long the applicant had notice of the interest before [he or she] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'"  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

## II.    PLAINTIFF'S MOTION TO SUPPLEMENT THE AMENDED COMPLAINT

As described above and discussed further below, Plaintiff seeks leave to supplement his Amended Complaint to plead additional facts which occurred subsequent to the filing of the Amended Complaint and to add certain individuals involved in the subsequent events alleged.[2] The Court will first address Plaintiff's proposed new allegations that purport to relate to conduct by the same defendants named in the Amended Complaint; the Court will then consider proposed claims against parties whom Plaintiff is seeking to add as new defendants to this case.

---

[2] With the exceptions of Corrections Officer Andujar, Imam Charles Aziz Udin Bilal, and Victor Knapp, Plaintiff proposes to name all defendants in their individual and official capacities.  (Pl. Mot. at 1.)

A.    **Additional Factual Allegations Relating To**
      **Defendants Named in the Amended Complaint**

   1.    **Food Service Managers of AMKC and GMDC**

In his Amended Complaint, Plaintiff named as defendants the food service managers of

AMKC (Robert Haberman) and GMDC (also previously identified by Plaintiff as Robert

Haberman, but now identified by him as "John Doe").[3]  Plaintiff now appears to seek leave to

allege that, during the so-called "second range" of his incarceration, these food service

managers, while on notice of Plaintiff's medically-prescribed diet, failed to ensure that inmates,

in general, and Plaintiff, in particular, received an appropriate diet on a regular basis.  (*See* Pl.

Mot., at 3, 11-13, 18.)  With respect to these defendants, Plaintiff's current motion thus appears

only to seek leave to extend Plaintiff's existing deliberate indifference claim to cover an

additional period of imprisonment, subsequent to the filing of the Amended Complaint.  As the

addition of these proposed new allegations would not unduly burden any party, Plaintiff's

motion to supplement his pleading in this regard is granted.

   2.    **Commissioner Horn**

After the Court initially dismissed Plaintiff's Section 1983 claim against NYCDOC

Commissioner Horn ("Horn") for failure to allege Horn's personal involvement in a

constitutional violation (*see* Order, dated February 4, 2005 ("2/4/05 Order") (Dkt. 3), at 2),

Plaintiff re-named him as a defendant in his Amended Complaint.  In that pleading, Plaintiff

merely alleged that he filed a complaint with Horn, asserting that he was not receiving his

---

[3] Since the date of Plaintiff's motion to supplement the Amended Complaint, counsel for
Defendants has informed Plaintiff that, at all relevant times, the Food Service Manager of
GMDC was actually Richard Bondy.  (*See* Letter to Plaintiff from Chevon Andre Brooks, Esq.,
dated Aug. 29, 2008 (copy submitted to the Court Feb. 2, 2009).)

medical diet.  (Am. Compl., at 16.)  While such allegations would not appear sufficient to state a claim under Section 1983,[4] no motion to dismiss the Amended Complaint has been filed, and thus the only question for the Court, at this time, is whether the additional allegations that Plaintiff now seeks to add against Horn should be permitted.

The only additional allegation that Plaintiff seeks to make against Horn is that Horn, at some unspecified time, was responsible for eliminating certain diet escort officers from the NYCDOC budget.  (Pl. Mot. at 11.)  Plaintiff does not allege that this action was taken in retaliation for Plaintiff's complaint, nor does he even allege that Horn personally reviewed Plaintiff's complaint.  Given that Plaintiff's new allegations do not allege any personal involvement by Horn in the alleged deprivation of Plaintiff's constitutional rights, Plaintiff's motion to supplement the Amended Complaint in this respect would be futile.  *Vasile*, 20 F. Supp. 2d at 468 (denying leave to supplement where the claim to be added would fail to state a claim upon which relief may be granted).  In light of the foregoing, Plaintiff's motion to supplement the Amended Complaint with additional factual allegations regarding defendant Horn is denied.

### 3.    **"Commissioner New York State Correctional Services John Doe"**

Plaintiff also seeks leave to supplement his Amended Complaint to add new allegations against the Commissioner of New York State Correctional Services, identified in the caption of the motion to supplement as "John Doe," but identified in the text of the motion, and in the

---

[4] Although the requisite personal involvement of a defendant to a Section 1983 claim may be established by showing that the defendant failed to remedy a constitutional violation after being informed of it, *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the mere receipt of a prisoner's letter protesting unconstitutional conduct generally will not constitute personal involvement unless the defendant reviews and responds to or acts on the complaint (*see* 3/17/08 R&R, at 24 (citing cases)).

Amended Complaint, as Alan J. Croce ("Croce").  (*See* Pl. Mot., at 9; Am. Compl., at 16.)
Plaintiff alleges that he directed grievances to Croce, complaining that Plaintiff's medical diet
was not served to him routinely while he was in state custody.  (Pl. Mot., at 10.)  Plaintiff further
alleges that prisoners in inter-prison transit were not served medical diets as a matter of policy,
and that Plaintiff raised an objection to this policy with Croce.  (*See* Pl. Mot., at 9.)

To the extent Plaintiff's claims against Croce relate to the "second range" of his
incarceration, the claims are not adequately supported by allegations of Croce's personal
involvement in any claimed constitutional violation.  Plaintiff does not allege that Croce
personally reviewed or responded to any of his complaints.  The mere receipt of a prisoner's
letter protesting unconstitutional conduct does not constitute personal involvement unless the
defendant reviews and responds to or acts on the complaint.  (*See* n.4, *supra*.)  Given that
Plaintiff has failed to allege personal involvement by Commissioner Croce in Plaintiff's alleged
constitutional deprivation, Plaintiff's motion to supplement the complaint in this respect would
be futile, and this aspect of Plaintiff's motion is thus denied.[5]

**B.**   **Proposed Additional Defendants**

Most of Plaintiff's new allegations relate to the purported conduct of individuals who
were not named as defendants in the Amended Complaint.  The Court will address, in turn, these
proposed defendants (identified herein as they have been named by Plaintiff), and the sufficiency
of the proposed allegations against them:

---

[5] Further, to the extent Plaintiff's claims against Croce relate to his earlier period of
incarceration and were raised in his original Complaint, Plaintiff would be barred from asserting
them now because the Court dismissed his initial claims against this defendant with prejudice.
(*See* 4/23/08 Order, at 3; see also *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986) ("A
dismissal with prejudice has the effect of a final adjudication on the merits favorable to
defendant and bars future suits brought by plaintiff upon the same cause of action.").)

1.      **Dr. Trevor Napier**

Plaintiff alleges, in the pending motion, that on or about May 27, 2008, Dr. Trevor

Napier ("Napier") conducted an allergy test on Plaintiff, and that this test showed that Plaintiff

was not allergic to tomatoes.  (Pl. Mot., at 16.)  Plaintiff further alleges, however, that Napier

failed to take the additional step of testing to see if Plaintiff had an "intolerance" for tomatoes.

(*See id*.)  As a result, Plaintiff alleges, tomato-based products which may have contained seeds,

which Plaintiff was instructed to avoid, were included in Plaintiff's diet.  (*Id*.)

These allegations fail to state a claim for a constitutional violation because, to make out a

claim for deliberate indifference, a plaintiff must allege that the defendant knew of and

disregarded an excessive risk to the inmate's health or safety.  *Hathaway v. Coughlin*, 37 F.3d

63, 66 (2d Cir. 1994).  Here, Plaintiff does not allege that Napier knew of Plaintiff's intolerance

to tomato seeds or of any excessive risk posed by any such intolerance.  Thus, Plaintiff's

proposed supplementation of the Amended Complaint to add allegations against Napier would

be futile, and Plaintiff's motion to supplement his pleading in this respect is denied.

2.      **"Dietician Ms. Purohit"**

Plaintiff alleges, in his pending motion, that Dietician Purohit ("Purohit") was

uninformed as to the proper diet to be served to persons with his condition, diverticulitis.  (*See*

Pl. Mot., at 20.)  According to Plaintiff, on or about April 24, 2008, Purohit developed a diet for

him containing "vegetarian beans" (*id*., at 16), and, whenever a meal was scheduled to contain

food (including tomatoes) which was medically inappropriate for Plaintiff, Purohit ordered beans

in substitution for the inappropriate food (*id*.).  Purohit reportedly believed that the beans served

to Plaintiff did not contain tomatoes (*id*., at 13), but Plaintiff seems to assert that the beans were

served in a tomato-based liquid (*id*., at 16).  In any event, Plaintiff alleges that, in May or June of

15

2008, Purohit discontinued Plaintiff's medical diet altogether, after she received both test results which purportedly showed that Plaintiff had no allergy to or intolerance of tomatoes and a physician's consultation which reported that an infection in Plaintiff's stomach had cleared. (*Id.* at 16-17.) Plaintiff alleges that he is, in fact, intolerant of tomatoes and tomato-based products because they contain seeds, and that he was never properly tested for this intolerance. (*Id.* at 16; *see also id.* at 5-6.) Further, Plaintiff alleges that his condition of diverticulitis is hereditary and, despite the physician's consultation in question, his condition had not improved. (*Id.*)

Plaintiff does not allege that Purohit, at any time, deliberately or knowingly included, in his diet, tomato seeds or any other food which she had reason to believe posed a serious health risk to him. Nor does Plaintiff allege that Purohit, subsequent to her receipt of his test results, had any reason to believe that the test results were inaccurate. For these reasons, Plaintiff's proposed allegations would not state a claim, with respect to Purohit, for deliberate indifference to excessive health risks. Accordingly, this proposed supplementation of the Amended Complaint would be futile, and Plaintiff's motion for leave to add these allegations is denied.

### 3. Food Service Managers of RNDC and GRVC, each identified as "John Doe"[6]

In his Amended Complaint, Plaintiff had alleged that the food service managers of the Riker's Island facilities in which he had been incarcerated up to that time had failed to ensure, generally, that inmates with medically prescribed diets received their proper diets. (*See* Am. Compl., at 16, 20-21.) It appears that Plaintiff is now proposing to add these same types of

---

[6] Counsel for defendants has now informed Mr. Wingate that the food service manager of RNDC during the relevant time was Colin Braithwaite, and that the food service managers of GRVC were Colin Braithwaite, Krisna Rampaul, Richard Bondy, and Lorna Wilkerson. (*See* Letter to Plaintiff from Chevon Andre Brooks, Esq., dated Aug. 29, 2008 (copy submitted to the Court Feb. 2, 2009).)

allegations with respect to the food service managers of two additional Riker's Island facilities in connection with the so-called "second range" of his incarceration.  (*See* Pl. Mot., at 18.)  In particular, Plaintiff now alleges that his proper medical diet was served to him only sporadically while, during that 2007-08 time period, his diet was under the purview of the food service managers of RNDC and GRVC.  (*See id.*, at 8, 13, 18.)

Plaintiff's proposed new allegations against the food service managers of GRVC and RNDC appear adequate to state claims against these individuals for deliberate indifference to a serious risk to Plaintiff's health.  Further, as these claims arise out of the same series of occurrences as Plaintiff's existing deliberate indifference claims and share common questions of law, Plaintiff is granted leave to raise his proposed claims against these additional food service managers.

### 4. "Nutricianalist [*sic*] for RNDC Jane Doe"[7]

Plaintiff alleges in his pending motion that, without interviewing him and based only on his medical charts, a nutritionist identified as "Jane Doe" developed a diet for Plaintiff that included processed foods, which Plaintiff believed to be unhealthy and which caused Plaintiff to experience gas.  (Pl. Mot., at 23-24.)  Although it is unclear precisely when these events allegedly took place, the allegations appear to be based on the "second range" of Plaintiff's incarceration.  (*Id.*, at 3, 11.)  Plaintiff, however, has not alleged that the processed foods exposed him to an excessive health risk or that the nutritionist in question knew of any such risk.  Accordingly, Plaintiff's proposed allegations against this nutritionist would not state a claim for

---

[7] Counsel for defendants has since informed Mr. Wingate that the nutritionist for RNDC, at the relevant times, was Joy Young.  (*See* Letter to Plaintiff from Chevon Andre Brooks, Esq., dated Sept. 9, 2008 (copy submitted to the Court Feb. 2, 2009).)

a constitutional violation, *Hathaway*, 37 F.3d at 66, and Plaintiff's motion to supplement the Amended Complaint to add these allegations is denied as futile.

###### 5.      **"Grievance Coordinator Moultre [of] GRVC"**

With seeming reference to the "second range" of his incarceration, Plaintiff seeks to plead that his grievances at GRVC were ignored by a Grievance Coordinator, identified as "Ms. Moultre" ("Moultre"), even though Moultre was purportedly aware that Plaintiff was not receiving his correct diet.  (*See* Pl. Mot., at 3, 11, 13-14.)  As an initial matter, a claim of violation of a state grievance procedure is not cognizable under § 1983.  (*See* 3/17/08 R&R, at 28; 4/23/08 Order.)  Nor would Plaintiff's proposed allegations against Moultre state a claim of deliberate indifference.  Given the fact that Dietician Purohit allegedly stated, in Moultre's presence, that the beans in Plaintiff's diet did *not* contain tomatoes (*see* Pl. Mot., at 13-14), Plaintiff does not sufficiently allege that Moultre actually knew of any excessive risk to Plaintiff's health.  *Hathaway*, 37 F.3d at 66.  Thus, Plaintiff's motion to supplement the Amended Complaint to add allegations against Moultre would be futile, and his motion in this regard is denied.

###### 6.      **City of New York Corporation Counsel Michael A. Cardozo**

An earlier-asserted claim by Plaintiff against Corporation Counsel Michael A. Cardozo ("Cardozo") was dismissed by the Court, apparently without prejudice, for lack of personal involvement.  (*See* 2/4/05 Order, at 2.)  In now seeking to add Cardozo back into the case, Plaintiff names him only in the caption of his motion and in a proposed list of parties; Plaintiff makes no specific factual allegations against him.  In particular, Plaintiff does not allege that Cardozo was deliberately indifferent to Plaintiff's failure to receive his medical diet or to any other excessive health or safety risk.  Plaintiff also makes no suggestion that Cardozo was

involved in Plaintiff's allegedly malicious prosecution of Plaintiff. Because Plaintiff's proposed new allegations contain no facts from which any claim against Cardozo can even be discerned, Plaintiff's motion to supplement the Amended Complaint to add Cardozo as a defendant would be futile and is denied.

### 7.   Corrections Officer Andujar and Imam Charles Aziz Udin Bilal

Plaintiff seeks leave to supplement his Amended Complaint with new allegations against Corrections Officer Andujar ("Andujar") and Imam Charles Aziz Udin Bilal. Plaintiff, however, has failed to allege the personal involvement of either of these proposed defendants in any alleged failure to provide Plaintiff with his required medical diet. Rather, Plaintiff has only alleged that Andujar did not allow him to leave his prison cell to receive a telephone call from the Imam, regarding Plaintiff's wife's death, and that the Imam failed to make sufficient efforts to secure Plaintiff's attendance at his wife's funeral. (Pl. Mot., at 21-22.)

These proposed allegations fail to suggest any legal theory on which claims against these defendants could be based. Further, to the extent Plaintiff may have a claim against either Andujar or the Imam, it would share no common questions of law or fact with the claims pleaded in the Amended Complaint. *See* Fed. R. Civ. P. 20(a)(2). Plaintiff's motion to supplement the Amended Complaint with allegations against Andujar and the Imam is therefore denied.

### 8.   Sergeant Scott Fields, New York Police Department

Plaintiff seeks leave to supplement his Amended Complaint with allegations against Sergeant Scott Fields ("Fields"). Plaintiff's proposed claim that Fields subjected him to a false arrest on April 4, 2007 arrest is, however, apparently the subject of another pending federal lawsuit, in the United States District Court for the Eastern District of New York. *See Wingate v.*

*Theodore, et al.*, No. 08 Civ. 217.  Joinder of Fields as a defendant in this case, therefore, would

be wasteful of judicial resources and potentially lead to inconsistent verdicts.  Moreover,

Plaintiff's proposed claims against Fields do not share common law or facts with the claims

raised in the Amended Complaint, and thus joinder of this defendant, in this case, would be

inappropriate.  *See* Fed. R. Civ. P. 20(a)(2).  For these reasons, Plaintiff's  motion to supplement

the Amended Complaint with allegations against Fields is denied.

**9.      Regina Moran, Bronx Clerk of Court**; **Andrew Meir, New**
**York State Assistant Attorney General; and Victor Knapp**

Plaintiff seeks leave to supplement his Amended Complaint with allegations against

Regina Moran ("Moran"), Andrew Meir ("Meir"), and Victor Knapp ("Knapp"), arising out of

Plaintiff's alleged lack of effective representation by counsel in criminal proceedings.  As set out

above, Plaintiff first alleges that Knapp, who, at one point, served as Plaintiff's defense counsel,

failed to make a motion and to obtain documents that Plaintiff viewed as important.  (Pl. Mot.,

at 26.)  Plaintiff then alleges that Moran, the clerk responsible for processing his request that

new counsel be appointed after Knapp's withdrawal, failed to act on that request.  (*Id*., at 24-25.)

Finally, Plaintiff alleges that Meir, as Assistant Attorney General, continued to prosecute the

case against him even though new counsel had not been appointed for him, thereby depriving

Plaintiff of representation.  (*See id*.)

Even setting aside the question of whether Plaintiff's allegations against Moran or Meir

could support any cognizable claim against them, it is plain that none of the allegations against

any of these three defendants arise out of the same transaction or occurrence, or share common

questions of law or fact with, the existing claims in this case.  Given that the proposed

allegations are entirely distinct from those raised in the Amended Complaint, joinder of these

20

defendants under Rule 20(a)(2) would be inappropriate, and Plaintiff's motion to add allegations against these three defendants is therefore denied.

## III.   THE MOTIONS TO INTERVENE

Fourteen of the 15 proposed intervenors have filed identical notices of motion and supporting declarations.  These 14 motions each seek an order

> [t]hat the additional Plaintiff be allowed to intervene as a party to this case because he also suffers from the negligence and deliberate indifference towards medical diet recipients in N.Y.C.D.O.C. and its agents . . custody.!!!!!

(Dkts. 94-99, 101-08 (emphasis in originals).)  Each supporting declaration then states that the proposed intervenor is entitled to relief for the following reasons:

> I am assigned a medical diet.  I do not receive it everyday. When I do receive it, it is incomplete[] & [n]o one in the facility can obtain the diet when it doesn't come based upon this being a non cooking facility.  And all reasons stated in the addendum claim of first Plaintiff Blake Wingate.

(*Id*. (Affirmations in Support of Motions).)

The 15th proposed intervenor, Sean Hamilton, has filed a separate application entitled "Request for Intervener Application," which this Court has deemed a motion to intervene and which has been docketed as such.  (Dkt. 119.)  Mr. Hamilton's motion is substantially similar to the other 14 intervention motions, stating that his prescribed medical diet "come[s] little to none, incompleted and cold."  (*Id*.)

The proposed intervenors may not intervene in this action as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure.  First, there is no federal statute which gives these proposed plaintiffs an unconditional right to intervene.   Second, the proposed intervenors are unable to show that their interest in this litigation may be impaired by its disposition.  The

proposed intervenors have adequate alternative means of protecting their interest in receiving their medical diets because they may file independent actions for injunctive relief and damages. *See United States v. City of New York*, 198 F.3d 360, 366 (2d Cir. 1999) (where proposed intervenors could obtain relief by means of an independent action, the requirement of showing that their interest would be impaired was not met).

Nor would it be appropriate for the proposed intervenors to join this case by way of permissive intervention under Rule 24(b).  Although the proposed intervenors' claims may share common questions of law with Plaintiff's claim, the introduction, more than three years into this litigation, of 15 new Plaintiffs, each with presumably unique medical histories, unique prescribed diets, and unique injuries, would unduly delay resolution of this action by requiring that the scope of discovery be expanded well beyond the allegations in the Amended Complaint.[8] In addition, the individual nature of the factual questions raised by these proposed intervenors would result in complex and confusing permutations of new and existing claims, as asserted by Plaintiff and the intervenors against numerous individual defendants.  *See CCS Commun. Control, Inc.*, 1984 U.S. Dist. LEXIS 24400, at *2-3.  The resulting case would be unwieldy and enormously burdensome to this Court, and would not aid in the efficient resolution of the various parties' claims and defenses.

The Court notes that Defendants also argue that the pending motions for intervention are not "timely" within the meaning of Rule 24 because Plaintiff's injunctive claims have been

---

[8] For example, the only two proposed intervenors who have provided this Court with any description of the medical conditions for which they require special diets allege that they require such diets for the conditions of high blood pressure, asthma, high cholesterol, and epilepsy, and neither claims to suffer from diverticulitis.  (*See* "Claimant A[n]swer to the City of New York Opposition," dated Aug. 21, 2008, filed by Musa Mohammed (Dkt. 120); "Claimant Ans[w]er to the City[']s Opposition," dated Aug. 21, 2008, filed by Nathanial Sackey (Dkt. 121).)

22

mooted by his most recent release from prison.  The intervention motions, however, are subject

to denial on other grounds, as stated above, and thus the Court need not reach the question of

timeliness, or the related question of whether Plaintiff, in light of his current parole status,

continues to have standing to raise his claims for injunctive relief.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is hereby ORDERED that:

1.      Plaintiff's motion to supplement the Amended Complaint (Dkt. 110) is

GRANTED, in the following respects only:

      a.      With respect to Plaintiff's claims that the food service managers of
AMKC and GMDC were deliberately indifferent to his medical
needs, Plaintiff may supplement the Amended Complaint with
additional factual allegations showing these defendants' personal
involvement in the alleged deprivation of Plaintiff's rights during
the period from April 2007 to June 2008; and

      b.      Plaintiff may add as defendants, on his deliberate indifference
claims, the food managers of RNDC and GRVC, and may
supplement the Amended Complaint with factual allegations
showing these defendants' personal involvement in the alleged
deprivation of Plaintiff's rights during the period from April 2007
to June 2008.

In all other respects, Plaintiff's motion is DENIED.

2.      The 15 motions to intervene in this action (Dkts. 94-99, 101-08, 119) are

DENIED.

3.       No later than 30 days from the date of this Order, Plaintiff is directed to serve and

file a Second Amended Complaint that contains (a) the allegations of the First Amended

Complaint, and (b) the additional allegations permitted by this Order.

Dated: New York, New York
          February 13, 2009

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge


Copies to:

Hon. Lewis A. Kaplan, U.S.D.J.

Mr. Blake Wingate
c/o Ms. Jessie Wingate
PO Box 638,
New York, NY  10028

Chevon Andre Brooks, Esq.
NYC Law Department
100 Church Street
New York, NY  10007